Gorman, J.
This is a proceeding in habeas corpus. The plaintiff on the 26th day of February, 1912, filed his petition in this court against the defendant, a constable in and for Cincinnati township, Hamilton county, Ohio, alleging that he, the plaintiff, is unlawfully restrained of his liberty by the defendant,, and pray- • ing that a writ of habeas corpus may issue to said defendant, and that the plaintiff may be discharged from such illegal restraint on final hearing. The petition is in due form, and there is attached thereto a copy of an affidavit and warrant under which the plaintiff was arrested and detained.
The defendant answered setting up that he is a duly elected and qualified constable of Cincinnati township, Hamilton county, Ohio, and that he has the body of the petitioner, Joseph Bernhardt, in his custody by virtue of a warrant issued by one Harry D. Armstrong, a justice of the peace in and for Columbia township, Hamilton county, Ohio. A copy of the warrant is »set out given under the hand and seal of the justice of the peace. There is also set out a copy of the affidavit upon which *546 the warrant for .the arrest of the petitioner is based. The defendant constable justifies the arrest and detention under the warrant, which it is admitted is not defective and was duly issued upon the filing of the affidavit. The copy of the affidavit' set out in the answer discloses that the arrest was made at the instigation of one Eugene Franck, state inspector of bake shops, for the state of Ohio, and in the affidavit, he charges that the petitioner on .or about the 16th day of February, 1912, at the county of Hamilton and state of Ohio did then and there use a cellar as a bakery, contrary to the statute in such ease made and provided, and against the peace and dignity of the state of Ohio.
The petitioner has replied to the answer of the constable in which he admits that he is detained by virtue of a warrant held by the defendant- Wise, as constable, and admits that said warrant was issued by virtue of Section 1012 of -the General Code of Ohio. The petitioner further ayers that he is a baker and engaged in the bakery business at 110 East MeMicken avenue in the city of Cincinnati, and that the oven of said bakery used by him is in the -basement of said premises and that said basement or cellar has been devoted to the use of his bakery since 1890, long prior to the passage of Section 1012 of the General Code. He further avers that his said bakery is and always has been constructed and operated upon and under all proper and sanitary rules, regulations and orders of the proper authorities of the city of Cincinnati and the state of Ohio, and that the reports of the board of health of the city of Cincinnati show that the petitioner’s cellar bakery is of the highest class, established by said board, namely, AA, and that he has a vested property interest in his bakery plant so located in said basement or cellar; that the same cost him a very large sum of money to construct and equip, and that it would cost him a large sum of money to be compelled to abandon said bakery and to construct another above the street level, and that he would by abandoning said bakery and removing from said premises suffer a large loss of trade and good will of his business, which he has built up at his present■ place of• business -at a large expense of time and, money; that he resides, with his family on-said premises above *547 said bakery, and if compelled to remove his bakery would also be compelled to remove his residence. He further avers that the bakery goods baked in said cellar bakery are as healthful as- if such goods were baked in an oven located above the street level. The petitioner further avers that in the baking of his- bakery goods he applies a heat of from 350 to 450 degrees Fahrenheit, thereby destroying all bacteria and other impurities in any manner likely to affect the bakery goods produced by the petitioner; that he has complied with all the rules, regulations and requirements of the state and of Cincinnati, beeping clean the floors, sidewalks, ceilings, woodwork, pans, cupboards, and all utensils and machinery used in said bakery; that he keeps the same well lighted and ventilated, adequate plumbing, and in every other respect complies with all the requirements of the state law and the city ordinance with reference to sanitation in his said bakery. He further avers that the healthfulness of his bakery goods does not depend upon the location of the said bakery, but depends upon the application and rigid enforcement of stringent rules and regulations as to plumbing, ventilation, cleanliness of all oven utensils, rooms, recepticles, machinery and employes .used or employed in or about the production of bakery goods, whether so employed above or below the street level.
Plaintiff further avers that there are over one hundred so. called cellar bake shops in the city of Cincinnati which cost the owners large sums of money, aggregating a hundred thousand dollars, and which have been in use for many years and prior to the passage of Section 1012 of the General Code in its present form. The petitioner further avers that there are many rathskellers, restaurants, hotels, boarding-house kitchens and other places in which baking and cooking are done, and eatables and drinkables prepared for public consumption, in the city of Cincinnati, located in part or wholly below the street level, and that no statute has been passed by the General Assembly of Ohio prohibiting such places from being used for such purposes, and that Section 1012 of the General Code discriminates against bakeries alone, and for that reason is unconstitutional and.void, as not being a law having a uniform operation through *548 out the state. The complainant further avers that said Section 1012, General Code, has no application to his bakery, because he had a vested right therein at the time said Section 1012 of the General Code was passed and became a law of this state. He further avers that said Section 1012 of the General Code is unconstitutional and void as being in contravention with Article I, Section 1 of the Bill of Rights of the Ohio Constitution, and contrary to the provisions of Section 1 of the Fourteenth Amendment of the Constitution of the United States.
A demurrer was filed to this reply and the cause was submitted to the court upon the arguments of c.ounsel and voluminous briefs.
There are two questions raised by the demurrer to the -reply, which demurrer, of course, searches the record, and under it the court may examine the petition, the answer and the reply, to determine whether or not the petitioner is illegally restrained of his liberty.
The petitioner claims, first, that Section 1012, General Code, does not apply to his-bakery, because at the time of the passage of the act referred to, or rather the act of which Section 1012 is a part, it was not intended to apply to cellar or basement bakeries then in existence. Secondly, he claims that if the court should be of the opinion that this law does apply to his bakery, then the law, or a part thereof, is unconstitutional and void on the grounds: first, that the law is not uniform in its application and operation; and, secondly, on the ground that the prohibition of the use of his cellar or basement for a bakery is a taking of his property without due process of law, contrary to the provisions of Section 1 of the Fourteenth Amendment of the Constitution of the United States. We shall examine these questions in the order in which they have been stated.
The Legislature of Ohio on April 27, 1896, passed a law known as an act for the regulation of the manufacture of flour and mill food products. The' act contained ten sections. On April 21, 1898, the Legislature amended this act and repealed all the sections of the prior enactment. We need concern ourselves only with the amended act. In substance the amended act provides ih'hihé sections, for the proper sanitation, drainage, plumbing *549 and all general sanitary conditions for bakeries, requiring air shafts, windows, ventilating pipes, etc., such as may be required by the chief or district inspector of bake shops. The act further provides for proper washrooms, closets, toilet rooms, etc., prescribes the heighth of the room, how sides of the walls should be constructed, the ceilings and the floors, kinds of furniture to be' used, and many other regulations which need not here be set out. The act further provided as follows:'

“And no cellar or basement not now used as a bakery, shall be hereafter used and occupied as a bakery, and a cellar heretofore occupied shall, when once closed, not be reopéned, unless the proprietor shall have previously complied with the provisions of this act.”

This law was carried into Bates’ Revised Statutes and numbered Sections 4364-71 to 4364-79, inclusive. No change was made in this law until the codifying commission. was appointed by virtue of an act of the Legislature passed April 2, 1906 (98 Ohio Laws, 221). This commission, composed of three persons appointed by the Governor, was directed and required to bring together all the statutes and parts of. statutes passed by the Legislature relating to the same matters, and to generally omit all redundant and obsolete enactments such as have no influence on existing rights or remedies, making alterations in harmonious statutes, to omit ambiguous words, and to arrange the statutes under suitable titles, divisions, subdivisions, chapters and sections, and to present the same in a general, concise and comprehensive form consistent with the clear expression of the will of the General Assembly, rejecting all equivocally ambiguous, circuitous- and tautological phraseology. The commission having performed its work, submitted to the General Assembly what is known as the General Code, and this General Code was passed and adopted by the Legislature of the state as its own handiwork, February 14, 1910; so that the General Code as it now stands is an enactment of the General Assembly of the state of Ohio, in its sovereign capacity as the law making body of this state. There can be no occasion for a reference to the work of the codifying commission in view of what the Legislature subse *550 quently did in adopting this code as one enactment of the Legislature except for the purpose of shedding light upon the meaning to be given to Section 1032 of the General Code.
Now Section 1012 of the General Code is a part-of the enactment of the Legislature passed April 21, 1898. That enactment relating to bakeries is now found compiled within the limits of Sections 1012 to 1019 inclusive, of the General Code. Section 1019 provides that a violation of any of the provisions of this code relating to bakeries, or a refusal to comply with a requirement of the chief inspector of workshops and factories or a district inspector made as provided herein shall subject the offender to pay not less than twenty dollars nor more than fifty dollars, and not less than fifty dollars nor more than two hundred dollars, or imprisoned not more than ten days, for each succeeding offense.
The section of this code which the petitioner ■ is charged with having violated is 1012, or rather he is charged with having violated a 'portion of that section, by using and conducting a bakery in a cellar, contrary to the provisions' of this section, which reads as follows:
“All bakeries shall be drained and plumbed in a santiary manner and provided with such air-shafts, windows or ventilating pipes, as the chief inspector of workships and factories or a district inspector directs. No cellar or basement shall be used as a bakery.”
It is this last sentence of this section of the General Code which the petitioner is charged with having violated, and it is this part of the section which it is contended does not apply to the petitioner’s bakery; and if so, then the .prohibition contained in this language is an unconstitutional enactment. It is argued and contended by counsel for the petitioner that by taking the enactment of April 21, 1898, it will be seen that the Legislature provided that no cellar or basement not then used as a bakery should be thereafter used or occupied as a bakery, and that it was not the intention of the Legislature, nor did it so enact that a cellar or basement which was then used as a bakery should not continue to be used as a bakery. In other words, it *551 is contended that the act of 1898 was prospective in its operation and intended only to apply to those cellar or basement bakeries which might be opened after the passage of the law, and that inasmuch as the codifying commission was only authorized to bring together all the statutes, simplify the same and reject all unnecessary language, the commission when it wrote Section 1012, or the last sentence thereto, simply stated in substance what the Legislature had provided by the act of April 21, 1898, and that the Legislature when it adopted the work of the Code Commission as its own did no more than re-enact that part of the law of 1898 which applied to cellar and basement bakeries.
Now, let us analyze the language of the Legislature in the act of 1898 and see what the Legislature did. It is true, I think and can not be controverted, that the act intended to apply to the bakery business as it should be conducted after the passage of the act of 1898. It was purely and simply a regulation of the bakery business and so intended. It had no retrospective operation or effect, but merely prospective. The Legislature divided cellars and basements into two classes by this act of 1898. One class was cellars and basements then used as bakeries, that is, used as such at the date of the passage of the act of April 21, 1898; and the other class, cellars and basements not used as bakeries at that time. Now the Legislature provided that cellars and basements not then used as bakeries could not be thereafter used as such; but did not prohibit cellars and bakeries then used as bakeries from being so used thereafter. But the Legislature further provided in this act that when a cellar or basement bakery was discontinued or closed that it could not be reopened, unless the .proprietor shall have previously complied with the provisions of the act, which could only mean, complied with the provision of the acts with reference to alterations and changes and with respect to ventilation and sanitation.
Now, the codifying commission and the Legislature, by the language of Section 1012 of the General Code, have substituted for all this language the prohibition, “no cellar or basement shall be used as a bakery.” If this language in Section *552 1012 has the same force and effect as the language in the act of 1898, then the complainant’s contention is well founded, that the law does not apply to his bakery, because it is admitted that his bakery in his cellar was in existence and operation at the time of the passage of the act of 1898, and also at the time of the adoption of the General Code in February, 1910.
It seems to the court that the language of Section 1012, which prohibits cellar and basement bakeries, is not the same as the language used in the act of 1898, nor can it be construed to mean the same thing. By the language of the last sentence of Section 1012 of the General Code, there is no classification of or exception to cellars and basements. No cellar or basement can be used as a bakery under this language whether it was theretofore used as a bakery or not, whereas by the language of the act of 1898 the prohibition extended only to cellars and basements which were not then used as bakeries, and cellars and basements which were then used as bakeries could continue to be so used.
There has been an elimination of the classification of cellars and basements which is found in the act of 1898. If the language of Section 1012 were employed in the act of 1898, then no bakery could be carried on in any cellar or basement, whether the business was then in existence or not.
As the court understands this act, it was not an act to regulate property, but an act to regulate business, to-wit: the business of baking food stuff for the people; and it was undertaken to prescribe that the business should not be carried on in certain places, which no doubt the Legislature contemplated were not suitable for the conduct of such business. Cellars and basements are not as open to the sunshine and the air, and are more subject to dampness and mouldiness, and I think it will be generally admitted that food stuffs, especially bread stuffs, can not be as well kept in cellars, as above ground; nor can the materials out of which bread stuffs are made retain their purity as well in cellars and basements as above ground.
Now, I am clearly of the opinion that the codifying commission and the Legislature, by changing the language of the act *553 of 1898, has made the prohibition apply not only to bakeries that were conducted and carried on in cellars and basements at the time the act of 1898 was passed, but it has made the prohibition extend to the carrying on of the bakery business in any cellar or basement regardless of the time when the business was established, whether prior to the adoption of the General Code in 1910, or thereafter. It is analogous to the situation which is presented by a person who is engaged in the business of trafficking in intoxicating liquors.
One may be engaged in that business of retailing intoxicating liquors on his own premises, without violating any law of the state, but under the local option law the people of the district in which his saloon is situated, may by a majority vote determine that he shall not carry on that business in that place, and upon an election being held as provided by law, if the majority of the electors in the district in which the saloon is located so express themselves the person or persons engaged in the saloon business must discontinue the business, and they are prohibited from opening up or carrying on the business thereafter. The Supreme Court has ’decided that such an enactment is a valid exercise of the police power by the Legislature, and that such legislation is in the interest of good morals of the state. The Legislature may also provide, under the police power, that dynamite and gunpowder shall not be stored in localities where any danger is likely to result to persons and property. The Legislature may also provide that slaughter-houses and other establishments where the business carried on has a tendency to endanger the health, or annoy, or become offensive to the sense of smell of the inhabitants of portions of the community shall not .be carried on in those places. And no doubt the Legislature when it passed this act, and the codifying commission and the Legislature when it re-enacted the General Code, had in mind the purpose or intention of passing laws in the interest of the public health.
Now the question arises, whether or not this enactment, which the court construes to be a prohibition to the carrying on of the bakery business in any cellar or basement, is a valid and con *554 stitutional exercise of the police power vested in the Legislature, or whether or not it is a violation of the guarantee extended to all the citizens by Section 1 of the Fourteenth Amendment of the Constitution of the United States. That section, or the part thereof with which we are concerned, reads as follows:
“Nor shall any state deprive any person of life, liberty or property without due process of law.”
It is contended that the bakery business is a lawful 'and harmless business, and that no evil arises out of the business; that it is not a nuisance and can not be declared to be a nuisance, and that the extent to which the Legislature may act under the exercise of police power is to provide proper sanitary regulations for the conduct of the business and that it can not prohibit the carrying on of the business in any place or locality. If. this be true, then the .last portion of Section 1012 of the General Code must be held to be unconstitutional as in violation of the guaranteed right of the petitioner under this article of the Constitution of the United States. Now we shall proceed to examine this question.
I am of the opinion that Article I, Section 1 of the Bill of Rights of the Ohio Constitution, which provides that all men have certain inalienable rights, among which are those of enjoying and defending life, liberty, acquiring and possessing and protecting property, is not contravened by this section of the statute. Nor is Section 19, Article I of the Bill of Rights of the Constitution of Ohio, violated by this act. That section among other things provides that “private property shall ever be held inviolate and shall not be taken without compensation made to the owner in money."
This legislation, in the opinion of the court, falls within the class of legislation which may be enacted under the police power of the state, and the only question as to its constitutionality is whether or not it is violative of the Fourteenth Amendment of the. Constitution of the United States, which among other things prohibits any state from depriving any person of life, liberty and property without due process of law. To the extent that the petitioner’s property in this case is limited in the uses to *555 Which it may be applied, there is to that certain extent a deprivation of property.
When the rise of a property is prohibited, it is the equivalent of the taking of the property; and if this use is prohibited without due process of law, then, in the opinion of the court, there has been a taking of private property without due process of law. But in the exercise of the police power by the state, which by the way is a power- that is not interfered with by the Fourteenth Amendment of the Federal Constitution, persons and property, liberty of movement and freedom of action, are subject to a limited control; and a limitation may be put upon the use of property and the use of one’s liberty. This it has been held .by -all the authorities may be done, provided the limitation upon the liberty of the citizen or upon the usé of his property is not an unreasonable one and tends to promote the general welfare, the public health, comfort, and protect the lives and security of the people.
The sole question to be determined in this ease is whether or not the last sentence in Section 1012 of the General Code, which prohibits the use of bakeries in cellars and basements, is a reasonable exercise of the police power of the state. While the Fourteenth Amendment guarantees due process of law and equal protection of the laws, and. is capable of an interpretation subjecting state legislation to a federal control nearly equal in scope to that now exercised by the state courts, nevertheless the view expressed by the Supreme Court of the United States in the “slaughter-house cases,” 16 Wallace, that the chief application of this clause can be found in the protection of the negro, was for many years considered to be the true interpretation of this amendment. But in later years the rule therein laid down has been widely departed from, and it is now held by the Supreme Court of the United States that this amendment may be invoked for the purpose of protecting the liberty and property of the individual citizen who claims that he has been deprived thereof without due process of law. It is not an easy matter to define what is meant by due process of law. In Great Britain it simply means that it is a judgment in accordance with the *556 forms, practices and precedents of the courts of Great Britain; or it means an act of Parliament. No court can question the validity of an act of Parliament. But in this country and in all the states thereof, by reason of the fact that we have a written constitution adopted by the people of the United States and of the different states, the courts have taken to themselves, if it has not been conferred upon them, the power and authority to determine the validity of. any act of the legislative department of the government. Therefore, in determining whether or not property has been taken without due process of law in this country and in this state, reference must be made to the constitutional provisions affording protection to property and prohibiting the taking thereof in any other manner than that prescribed by the fundamental law of the land.
According to the broad and equitable doctrine of modem cases, if is not necessary to constitute a taking of 'property for public purposes that the actual occupancy or possession of the property should be assumed and its title acquired. A serious interruption to the common and necessary use of property is said to be equivalent to taking it, within the meaning of a constitutional provision and it is not necessary that the land should be absolutely taken. See Pumpelly v. Green Bay, etc., Canal Co., 14 Wal., 166.
The term “police power” has never been clearly circumscribed. Blackstone defines it as “the due regulation and domestic order of the kingdom, whereby the individuals of the state, like members of a well governed family, are bound to conform their general behavior to the rules of propriety, good neighborhood and good manners; and to be decent, industrious and inoffensive in their respective stations.” Blackstone, Vol. 4, 162-175.
In the decisions of the courts of the various states and the Supreme Court of the United States, we find the term “police power ’ ’ coupled with internal commerce and - domestic trade, health and safety measures, legislation relating to gambling, game laws, idleness, disorderly houses, proper mode of living, the conservation of health, the honor and cleanliness of the *557 people and a multitude of subjects over which it is admitted that the state has ample authority under this power to exercise its paternal care. It is also universally conceded that it is a power to be exercised by the states and not by the federal government; and the only grounds on which the federal courts undertake to pass, upon legislation of the character of police regulations, is when the claim is made that the legislation is violative of the Fourteenth Amendment.
The legislation of which Section 1012 of the General Code is a part is an exercise of the power of the state to provide for the-health of the people and the conservation of the strength and health of the persons employed in bakeries. The act under consideration was copied almost verbatim from an act passed by the Legislature of the state of New York, which was considered in part in the case of Lochner v. The State of New York, 198 U. S., 45. This act of the Legislature of New York undertook to regulate bakeries, to prescribe the number of hours of labor which bakers could be required to perform in any one day, provide for the sanitary conditions of all bakeries and for inspection thereof, for wash-rooms, and limiting hours of labor to sixty hours a week and not more than ten hours a day. The act also provided that no cellar or basement not used as a bakery at the time of the passage of the act should thereafter be used or occupied.as such, unless the proprietor shall comply with the sanitary provisions of the act. A.n examination of the various sections of this act, which will be found set out in full in the case just cited, will disclose a great similarity to the sections of the General Code of Ohio, 1012 to 1019 inclusive.
The ease above cited arose in Oneida county, New York, where one Lochner was indicted and convicted in the Supreme Court in that county of having required a baker to work more tha.n sixty hours per week in his (Lochner’s) bakery. A demurrer was interposed to the indictment on the ground that the law was invalid and void because in contravention of the Fourteenth Amendment of the Federal Constitution. It may be interesting to show the diversity of opinion of the judges who passed upon this legislation. The constitutionality of the law *558 was upheld by the judge of the Supreme Court of Oneida County. On appeal to the Appellate Division of the Supreme Court of New York the constitutionality of the law was sustained by a divided court of three to two. In the Court of Appeals of New York, composed of seven judges, the judgment of the Appellate Division of the .Supreme Court was affirmed by a divided court of four to three, and on error to the Supreme Court of the United States the judgment of the Court of Appeals of New York was reversed and the law held to be unconstitutional by a divided court of five to four; Justices Harlan, White, Holmes and Day concurred in a dissenting opinion, whereas five of the judges, Peckham, Fuller, Brewer, Brown and McKenna, held that a part of the law was invalid as an invasion of the constitutional right, without due process of law, of the accused, Lochner, to contract. The constitutionality of this part of the enactment was sustained by twelve judges who passed upon it, and it was held to be unconstitutional by ten judges; but inasmuch as the Supreme Court of the United States had the last say, ’ and five of the judges held the law to be unconstitutional as against four who held it to be constitutional, that provision of the law which prohibited persons from laboring in bakeries more than sixty hours per week was held to be invalid. The remaining parts of the statute were not affected by this decision.
Without undertaking to criticize the wisdom of the holding of those judges who held the law to be unconstitutional, it would appear that there was grave doubt as to the unconstitutionality of the legislation, to say the least. As was said by Justice Holmes in his dissenting opinion:
“A reasonable man might think it a proper measure on the score of health. Men whom I certainly could not pronounce unreasonable, would uphold it as a first installment of a general regulation of the hours of work.”
It is an elementary principle of law that courts must not hold any legislation unconstitutional unless it be clearly so, and that every reasonable intendment shall be held to favor the validity and constitutionality of an act of the Legislature. If there-be *559 any reasonable doubt as to tbe constitutionality of an act of the Legislature, it is the duty of the court to resolve that doubt in favor of the validity of the law and not against it; and the duty to so hold and apply this rule rests with special force upon the judges of the inferior courts, courts below the court of last resort. In this case before the court, if there is any reasonable doubt as to the constitutionality of this legislation, it would be my duty to sustain it.
The strongest case that has been cited by eóunsel for the petitioner in support of their contention that this law is unconstitutional is In re Jacobs, 98 N. Y. Rep., 98. The Court of Appeals of New York in that case had under consideration an act which prohibited and made criminal the manufacturing of cigars in tenement houses, and it was sought to uphold the legislation as a valid exercise of the police power of the state for the conservation of the health of the occupiers of tenement houses. It was attacked upon the same ground that the bakery, act under consideration in this case is attacked, to-wit, that it was a violation of the constitutional guarantee afforded by the Fourteenth Amendment.of the Federal Constitution, in that it deprives the occupiers of tenement houses of their property without due process of law. In that case the court held that property may be destroyed or its value annihilated, if the owner is kept from using it for a useful and lawful purpose. It .further held that the value of property consists in the right to use the property, and that the constitutional guarantee would be of little worth if the Legislature could, without compensation, deprive property owners of the right to use the same for any lawful purpose. In that ease numerous authorities were cited supporting the doctrine that the Legislature, in the exercise of the police power, has the right to limit in a reasonable manner the uses to which property may be put, if the limitations of those uses tend in any way to further the purpose for which the legislation was intended. But in that case, the Supreme Court was of the opinion that there was nothing deleterious or unwholesome in or about the manufacture of cigars in tenement houses, and that the prohibition of the manufacture of cigars therein did not *560 tend in any manner to protect the health of occupants of tenement houses.
Judge Cooley lays down this rule in the 4th Ed., Section 719, of his Constitutional Limitations:
“The limit to the exercise of the ‘police power’ in these cases must be this: the regulations must have reference to the comfort, safety or welfare of society; they must not be in conflict with any of the provisions of the charter; and they must not under pretense of regulation, take from the corporation any of the essential rights and privileges which the charter confers. In short, they must he police regulations in fact, and not amendments of the charter in curtailment of the corporate franchise.”
Generally, it has been held tha,t'-it is Nj. the Legislature to determine what laws and regulations are needed to protect the public health and secure the public safety, and if its measures a^e calculated, intended, convenient and appropriate to accomplish this end, the exercise of its discretion is not subject to review by the courts; but they must have some relation to those ends. Under the mere guise of police regula Jons, personal rights and private property can not be arbitrarily affected, and the determination of the Legislature is not final ■’’■"five.
If we are to determine the validity of this aei lature under consideration, Section 1012, by this ■ ¿, we must ask ourselves whether or not the legislatioii any relation to the end sought to be accomplished by the Legislature. Now, it is manifest that the purpose intended to be accomplished by the Legislature or the end sought to be attained, was the preservation of the health of the inhabitants of this state. All people of the state use, bread, and it can not be denied that it is desirable and essential that the bread used by the people should be as wholesome as it is possible to make it. Wholesome bread conduces to good health, and unwholesome bread very materially conduces to ill-health. Furthermore, it was no doubt in the mind of the Legislature to conserve the health and strength of employes in bakeries.
Now can it be said that the prohibition of bakeries in cellars and in basements has no relation towards securing the health of *561 the people of the state and the health and strength of the employes in bakeries? It must be known to any court who undertakes to pass upon legislation of this character, that cellars and basements are not as sanitary because of their location as are rooms and apartments entirely above the ground; nor can they' be made as wholesome as rooms and apartments entirely above' ground. There is always more or less dampness in rooms under ground or partly under ground; there is always a limitation to the amount of light that may be admitted to such rooms; there is a limitation to the amount of wholesome air that may be admitted; and there is a limitation to the amount of sunshine that may be secured in such places.
The court is of the "dpinion'that it can not be said in this ease that the prohibition .of bakeries in cellars and basements has no relation whatsoever to the health of the inhabitants and the strength and health of the employes in bakeries. If this legislation has any relation to the end sought to be attained by the" Legislature, then the Legislature is the sole judge of whether or not that end WÍíf"6e attained; It may be that, in’ the opinion of this court, neither the health of the inhabitants nor of those ' employed in the bakeries will be furthered or promoted by prohibiting bakeries in cellars or basements, but if every judge upon every bench in the state of Ohio was of that opinion, and nevertheless reasonable'men might be found-who hold to the contrary opinion, it would not be within tbe province of the court to hold the law unconstitutional on the ground that it is an unreasonable exercise of the police power. If reasonable men might differ as to the efficacy of the law, then the law must be held to be constitutional, because the Legislature is presumed to. be composed of reasonable men, and if in their opinion it will tend to bring about the ends which they seek to attain, it is not' for the court to set up its judgment and opinion as to the efficacy of the law against the judgment- and the opinion of the legislative body. Even as a police regulation for the conservation of the health and strength of those, who labor in bakeries, I am of the opinion that a court in the exercise of a sound judgment would not be warranted in saying that the Legislature *562 has no right or power to prohibit the carrying on of bakeries in cellars and basements. The court is inclined to agree with the judgment of Justice Holmes, in Lochner v. State, 198 U. S., supra, that “this case is one that may be decided from an economic standpoint.” He says that “if it were a question whether I agreed with the economic theory, which a large part of the country does not entertain, I should desire to study it further and long before making up my mind.”
Again he says:
“ It is settled by various decisions of this court that state constitutions and state laws may regulate life in many ways which we as legislators might think as injudicious or if you like as tyrannical as this, and which equally with this interfere with the liberty to contract."
He cites the Sunday laws, usury laws, laws prohibiting lotteries, the post office laws and regulations, and finally concludes that if reasonable men might think any legislation a proper measure to secure the health, comfort or general welfare of the community, then it is not within the province of the court to hold the law unconstitutional.
A recent ease decided by the Supreme Court of Wisconsin, Benz v. Kremer, passes upon the constitutionality of an act similar to the one under consideration. The case will be found reported in the 26th L. R. A. (N.S.), 842, decided February 22, 1910. This act is somewhat similar to the one under consideration. It prohibited bakeries in a room, the floor of which was more than five feet below the level of the surface of the adjacent' ground. An injunction was sought by one Makielski, the owner" of the property, and one Bentz, the tenant of the property using the same as a bakery in the city of Milwaukee, against the de- ‘ fendant, Kremer, as state bakery inspector, to enjoin him from. requiring' them to discontinue the use of their premises as a bakery, the same being conducted in a cellar more than five feet below the adjacent ground. The court dismissed the injunction and held the law to be a valid exercise of' the police power by the "Legislature. It was further contended in this case that théplaintiff’s'bakery was' constructed 'after the passage'of thelaw *563 requiring the floor to be not more than' five feet below the level of the street. The court in passing upon the law, speaks of bakeries as follows:
‘ ‘ That places where bread stuff for public consumption is prepared should be sanitary would not be questioned, nor that such places where sun and air are admitted would be much more so than in basements so far below the surface of the ground as to practically, or in a large degree, exclude sunlight and an abundance of pure air, and thereby render the bakery less sanitary than if constructed not more than five feet below the level of the street. * * * It is a matter that must be left to the judgment of the Legislature.”
The court further says:
“Obviously, such a regulation could not be held unreasonable when its purpose and the effect of its observance would be to promote the production of wholesome food.”
This language is especially 'pertinent to the claim of the plaintiff in this case, that his bakery is A 1, and one of the most sanitary bakeries in the city of Cincinnati. This same claim was made in the Wisconsin case, and note the language of the Supreme Court with reference to this claim:
“But it is said that the plaintiff’s bakery, though more than five feet below the surface of the ground, is still as sanitary as any other, because of the physical condition of the location, hence that there is no necessity for enforcing the law in the instant case. But .individual cases can not determine the necessity of a general law on the subject, nor indeed rule the question of classification. The question is whether in general the public health will be promoted by the rule, and not whether isolated cases do not need such a rule. If the rule be in the interest of the- public health it must be general and all within the class controlled by it. ”
And in the case at bar, although it be admitted by the demurrer that the plaintiff’s bakery is.sanitary, nevertheless the constitutionality of the law and the right of the plaintiff to • maintain his bakery under ground can not be determined by the fact that his bakery is the most sanitary one in the city of' *564 Cincinnati. Numerous, authorities might be cited to sustain the proposition that it is the function of the -Legislature to determine what reasonable measures shall be passed in the interest of the public health and the general welfare, and that courts must not and can not hold a law passed under the police power to;be unconstitutional, unless it is manifestly so and does not tend .to. accomplish the purposes intended by the Legislature.
In deciding an injunction suit brought by the plaintiff in this case' some time ago, this court in an obiter expressed a doubt as to the constitutionality of this law, but stated that no proper consideration of the constitutionality of the law had been given. Since this case has been submitted, the court has read numerous authorities and has considered the question of the constitutionality of the. law as fully as the limited time within which he should decide this case wotild.permit, and has come to the conclusion that in view -of his position as a judge of a court inferior to that of the Supreme Court of the state, and in view of the fact, to say the least, that reasonable minds might differ as to the efficacy of this legislation to produce the results intended by the Legislature, it is not within the province of this court to'hold this law unconstitutional.
One of the very recent cases decided by the Supreme Court of the United States is that of Laurel Hill Cemetery v. The City and County of San Francisco, 216 U. S., 358. In that case the Legislature of California authorized the city of San Francisco to pass an ordinance prohibiting burial of bodies in cemeteries located within the city limits. It was contended that there was nothing unsanitary in the burial of persons within the city limits. The ordinance recited that the burial of the dead within the city and county of San Francisco is dangerous to life and detrimental to the. public health. In deciding the case Justice Holmes, who delivered the opinion, says on page 365:
“If every member of this bench clearly agreed that burying grounds were centers of safety and thought the board of supervisors and the Supreme Court of California wholly wrong, it would not dispose of the case. There are other things to be considered. Opinion still may be divided, and if, on the hy *565 pothesis that the danger is real, the ordinance would be valid, we should hot overthrow it merely because of our adherence to the other belief. Similar arguments were pressed upon this court with regard to vaccination, but they did not prevail. On the contrary, evidence that vaccination was deleterious was held properly to have been excluded.” Jacobson v. Massachusetts, 197 U. S., 11.
• On page 366, in speaking of the authority of the Legislature to limit the uses of property under the police power, he says:
“And yet again the extent to which legislation may modify and restrict the uses .of property consistently with the Constitution is not a’question for pure abstract theory alone. Tradition and the habits of the community count for more than logic. Since, as before the making of constitutions, regulation of burial and prohibition of it in certain spots, especially in crowded cities, have been familiar to the Western World. This is shown sufficiently by the eases cited by the court below. * * * The plaintiff must wait until there is a change of practice or at least an established consensus of civilized opinion before it can expect this court to overthrow the rules that the lawmakers and the court of his own state uphold.”
The Supreme Court of our own state in the case of State, ex rel Milhoof, v. Board of Education, 76 O. S., 297, has upheld the regulations and rules of a board of education made under Section 3986 of the Revised Statutes, authorizing them to make and enforce rules and regulations to secure vaccination, which rules prohibited any child from attending school who had not been vaccinated, and the question of whether or not vaccination was a means of preventing small-pox the court said was one for the Legislature to determine and not for the court.
So, in the case at bar, the court is of the opinion that it is for the Legislature to say whether or not the general health of the people of this state will be promoted and the health and' strength of employes in bakeries will be conserved by prohibiting bakeries in cellars and basements. The farthest that this court could go would be to express a doubt as to the constitutionality of this legislation. If it be only a doubt, then the doubt must be resolved in favor of the validity of the law, in view of the *566 rule heretofore referred to as applicable to courts in the determination of the constitutionality of legislation.
The limitations within which opinions should be stated will not permit the court to comment upon the numerous authorities cited in the very able briefs of counsel for the petitioner and the respondent in this case. Suffice it to say that whatever casual opinion the court may have expressed upon the hearing of the injunction suit, he is now satisfied that this legislation is not in contravention of any provision of the Constitution of the state of Ohio, or of the Fourteenth Amendment of the Federal Constitution.
The judgment of the court is, therefore, that the petitioner be remanded to the constable to be dealt with as provided by law.